THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**DAVILAH CRUZ,** *et al.,*

    **Plaintiffs,**

    v.

**MUNICIPALITY OF LAJAS,** *et al.,*

    **Defendants.**

Civil No. 19-1119 (ADC)

**OPINION AND ORDER**

Before the Court is co-defendant Marcos Martínez's, doing business as El Piñatón, ("Martínez") motion for summary judgment. **ECF No. 86**. For the reasons set forth below, Martínez's motion for summary judgment is **GRANTED**.

**I. Factual and Procedural Background**

In August of 2018, the Municipality of Lajas ("Lajas" or "the Municipality") held a series of events in public venues such as Lajas's public plaza. **ECF No. 70** at 2. To facilitate the planning and production of these events, Lajas hired Madera Events & Associates Corp. ("Madera Events"), an event production company. *Id.*

Madera Events, in turn, hired subcontractor Wito's Lighting and Sound Corp. ("WLS") to provide the sound systems for at least one of the events. *Id.* As part of these events, at least one sound speaker was placed in the vicinity of Lajas's public plaza. *Id.*; **ECF No. 26.**

On August 4, 2018, five-year-old co-plaintiff Deven Dasilva ("Dasilva") allegedly tripped over a tangling of cables attached to a 60-pound speaker during a visit to Lajas's public plaza

after posing for some pictures next to a pineapple sculpture. **ECF No. 26** at 4. The speaker was set up as part of the production of one of the aforesaid events, which was held on that day. Ostensibly, the speaker fell as the wires were yanked, crushed Dasilva's left hand, and severed his left thumb. *Id.* Before the incident, Dasilva and his mother, Davilah Cruz ("Cruz"), by all accounts had bought "piña coladas" at El Piñatón – a food truck-type stand owned and operated by Martínez that sells "piña coladas" and pineapple goods near Lajas's public plaza. *Id.*

Cruz sued co-defendants Martínez, El Piñatón and Lajas, among others, on her minor son's and her own behalf. *Id.* Martínez then filed a third-party complaint against Madera Events and WLS, alleging that any liability in this case had been incurred by them and by Lajas. **ECF No. 29.** All third-party claims against WLS were subsequently dismissed with prejudice, in light of ongoing Chapter 7 bankruptcy proceedings. **ECF Nos. 44, 50 and 51.**

Now, Martínez moves for summary judgment. **ECF No. 86**. He argues that he is not liable for the damages purportedly suffered by plaintiffs because he exercises no control over the area where the accident took place. Thus, in his view, he did not owe plaintiffs a duty of care in that area or otherwise incur in any negligent act or omission that could have proximately caused the alleged damages. *Id.* Plaintiffs maintain, via response and without competent proof, that the area where the accident occurred is part of Martínez's business, and thus under his duty of care. **ECF No. 96.**

## II. Standard of Review

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). The Supreme Court encourages employing summary judgment in federal courts – it "[avoids] full blown trials in unwinnable cases, … [conserves] parties' time and money, and [permits] the court to husband scarce judicial resources." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314 (1st Cir. 1995). *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *See Calero-Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004). The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

In short, when there is a genuine dispute as to any material fact, and when a court would be required to make credibility determinations, weigh the evidence, or draw legitimate

inferences from the facts in order to adjudicate a controversy, summary judgment will not be granted. While no legitimate inferences can be drawn, the court will construe all reasonable inferences in favor of the nonmoving party. *See Stoutt v. Banco Popular de Puerto Rico*, 158 F. Supp. 2d 167, 171 (D.P.R. 2001). Still, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

### III. Applicable Law

Article 1802 of the Civil Code — Puerto Rico's general tort statute — provides that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws. Ann. tit. 31, § 5141. "The elements of an Article 1802 claim are a physical or emotional injury, a negligent or intentional act or omission (*i.e.*, a wrongful act), and a causal connection between the injury and the defendant's wrongful conduct." *Díaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 716 F.3d 256, 265–66 (1st Cir. 2013) (citing *Vázquez–Filippetti v. Banco Popular de Puerto Rico,* 504 F.3d 43, 49 (1st Cir. 2007)).

Article 1802 thus provides for a cause of action stemming from an individual's own negligent acts. *See Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85. 88 (1st Cir. 2006). "[A] defendant only breaches [their] duty if [they] acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." *Vázquez-Filippetti*, 504 F.3d at 49 (*citing Ortiz v. Levitt & Sons of P.R., Inc.*, 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973)).

When a tort claim is based on dangerous conditions found on commercial property "the general rule is that although a business owner is not the absolute insurer of the safety of its patrons, the business owner has a duty to keep said establishment in a safe condition so that the clients do not suffer harm or damage." *Jiménez v. Desarrolladora Del Norte S En C, S.E.*, No. 08-1928 (PG), 2010 WL 3087497, at *4 (D.P.R. Aug. 6, 2010) (*quoting Torres v. Kmart Corp.*, 233 F. Supp. 2d 273, 278 (D.P.R.2002)). In claims where the business owner knew or should have known of risky conditions within the business premises, liability is imposed. *See Vázquez–Filippetti*, 504 F.3d at 50.

Plaintiff bears the burden of proving that the defendant had actual or constructive knowledge of the dangerous condition that most likely than not caused the foreseeable damage. *See Situ v. O'Neill*, 124 F. Supp. 3d 34, 43 (D.P.R. 2015). That the dangerous or risky conditions were found *within* the business premises (or at the very least under the businesses control) is part and parcel of this inquiry. *Cf. la Cruz v. El Buen Café,* No. 16-1194 (PG), 2016 WL 6426369 at *2 (D.P.R. Oct. 28, 2016*); Torres*, 233 F. Supp. 2d at 278.

**IV. Discussion**

*i. The Mise en Scène*

A proper understanding of the area where Dasilva's alleged accident took place is crucial to assessing Martínez's motion for summary judgment. Plaintiffs submitted a series of photographs to the Court depicting that area and its surroundings. **ECF Nos. 97-1, 97-2, 97-3, 97-4, 97-5 and 97-7.** As shown in, **ECF No. 97-4**:

An ample walkway runs along the bottom of the picture, adjacent to Lajas's public square.[1] *Id*. Three wide steps rise from the walkway. *Id*. The top of these steps opens to a landing, which is followed by four equally wide steps. *Id*. A second landing sits atop these four steps. *Id*. Two small terraces are perched to the left of the steps and landings. *Id*. Each small terrace corresponds to one of the landings. *Id*. To the right of a wall that stretches behind the second terrace and landing, a narrow flight of stairs (at least 18 steps long) connects the second landing to a large terrace at the top. *Id*.

The third terrace – the top one – is the largest of the three. *Id*. It is open to the air but girdled by metal railings and an arched roof. *Id*. Affixed to the roof are the words "EL PIÑATÓN" in yellow. *Id*. Beneath the roof sits an octagonal food-truck type stand made to resemble a pineapple. *Id*.

The second terrace, well below the top one, is much smaller by comparison. *Id*. On it are a miniature ship (no longer or wider than a single bed) with an awning, and shrubbery. *Id*.

The first terrace – the bottom one – is the smallest of the three. *Id*. On it stand only a concrete electrical pole and a cement sculpture of a pineapple painted yellow and green. *Id*. The pineapple sculpture should not be taller than three or four feet. *Id*. Dasilva and Cruz purportedly stopped to pose for pictures with this pineapple sculpture just before the alleged accident occurred on the bottom terrace. **ECF No. 26.** Dasilva allegedly tripped over a tangling of cables attached to a 60-pound speaker that was placed on that terrace after posing for some pictures

---

[1] The edge of the public square is pictured in **ECF No. 97-3.**

next to the pineapple sculpture. *Id.* at 4. Ostensibly, the speaker fell as the wires were yanked, crushed Dasilva's left hand, and severed his left thumb. *Id.*

A parking lot and an establishment called "Los Balcones Bar & Grill" bookend the structure. **ECF No. 97-4**.

*ii. Analysis*

The matter of Martínez's liability in this case turns on two questions. The first, whether Martínez owed Dasilva and Cruz a duty of care in the lower terrace. To that effect, Martínez contends he does not because El Piñatón only leases, operates and is responsible for the top terrace. Plaintiffs on the other hand, maintain that El Piñatón comprises the entire structure described above, including the bottom terrace – where the accident occurred – and, as such, Martínez owes patrons a duty of care in the lower terrace. The second question, whether Martínez owns the pineapple sculpture on the bottom terrace. Predictably, Martínez asserts he does not, and plaintiffs insist he does.

Martínez posits in his proposed statement of uncontested material facts, **ECF No. 87, Defendant's Statement of Uncontested Material Facts ("DSUMF")**, that he does not own or control the lower terrace, where the accident took place, and that he instead only leases the top terrace. **DSUMF ¶ 16** ("[El Piñatón] is far from where the accident allegedly occurred."); **DSUMF ¶ 18**. These statements are supported by materials of evidentiary value.

To that effect, Martínez submits two sworn and notarized answers to plaintiffs' requests for admissions, which the Court properly treats as affidavits.[2] **ECF No. 86-2 ¶¶ 5-12** ("… the control of the area where the pineapple is located is from the Municipality of Lajas. I just control the space where my business is located, an [sic] space of approximately 14′ x 20′ …"); **ECF No.86-3 ¶¶ 1** (The pineapple is located 75-100 feets [sic] distant from the entrance of the kiosk which is located in terrace where it was authorized and endorsed by the municipality of Lajas.") **and 2** ("The street wall where the pineapple icon is located is about 75-100 feets [sic] distant from 'El Piñatón kiosk" entrance which has grille and gate."). In addition, Martínez submits the lease agreement he signed with Lajas, which only endorses and authorizes him to operate in "the new terrace adjacent to *Los Balcones* business …" **ECF No. 86-1.** It follows logically from the plain text of the lease agreement that Martínez only contracted with Lajas to operate his business in, and control, a single terrace – the top one – rather than three.[3] Thus, control over the small bottom and middle terraces fall well outside of his purview.

Plaintiffs launch a doomed effort to contest Martínez's submitted, competent evidence and **DSUMF** by attaching to their opposition, without more, pictures of the structure. These pictures are insufficient to rebuke Martínez's submissions – which stand as uncontested material

---

[2] "Even a clearly self-serving affidavit constitutes evidence which the court must consider when resolving summary judgment motions." *Levine-Díaz v. Humana Health Care*, 990 F. Supp. 2d 133, 140 (D.P.R. 2014) (*quoting Malavé–Torres v. Cusido*, 919 F.Supp.2d, 198, 204 (D.P.R. 2013) ("A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support summary judgment.")).
[3] A terrace is defined as a "a relatively level paved or planted area adjoining a building," "a flat roof or open platform," or a "a raised embankment with the top leveled." "terrace." *Merriam-Webster.com*. Merriam Webster, 2021. Web. 17 September 2021. None of these definitions describe a structure with three separate terraces, landings, and stairwells.

facts in this case. If mere pictures, without more, showed surefire property lines and ownership, much litigation would be beyond contest or avoided altogether with the single click of a camera.

Thus, the Court holds that the area where the accident took place was outside of Martínez's control and outside of his business's premises – he accordingly had no say in the decision to place the sculpture of a pineapple or the speaker and cables on the bottom terrace.[4] As such, Martínez cannot be liable under Article 1802: he owed defendants no duty of care in an area outside of the premises of his business and of his control. *See Vázquez–Filippetti,* 504 F.3d at 50; *O'Neill,* 124 F. Supp. 3d at 43; *Torres,* 233 F. Supp. 2d at 278; *Buen Café,* 2016 WL 6426369 at *2.

Plaintiffs, in a last-ditch-effort, attempt to save the case by arguing, without any evidence or basis, that Martínez owns the pineapple sculpture and placed it in the lower terrace to advertise El Piñatón. That argument also stands little chance because Martínez establishes the opposite by way of competent evidence. *See* **ECF Nos. 86-2 ¶¶ 5-12 and 86-3 ¶¶ 1 and 2.** *See also* **86-5** (depicting various, seemingly identical pineapple sculptures in different locations throughout Lajas, *i.e.* on a "traffic island" or raised highway gore, on a sidewalk and at the entrance to the Municipality).

Plaintiffs' have therefore failed to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson,* 452 F.3d at 108. As such, Martínez's motion for summary judgment is **GRANTED.**

---

[4] Again, Dasilva allegedly tripped over a tangling of cables attached to a 60-pound speaker that was placed on that terrace after posing for some pictures next to the pineapple sculpture. **ECF No. 26** at 4. Ostensibly, the speaker fell as the wires were yanked, crushed Dasilva's left hand, and severed his left thumb. *Id.*

**V. Madera Events's Motion for Summary Judgment.**

Before the Court is third-party defendant Madera Events's[5] motion for summary judgment. **ECF No. 69**. However, Madera Events is only party to this case by virtue of a third-party complaint levied by Martínez. **ECF No. 29.** Plaintiff has not directly raised any claims against Madera Events. *See* Fed. R. Civ. P. 14(3).

Thus, in light of the dismissal with prejudice of plaintiffs' claims against Martínez, the third-party complaint against Madera Events (**ECF No. 29)** is also dismissed. *See Arroyo-López v. Hosp. Dr. Domínguez, Inc.*, 262 F.R.D. 93, 95 (D.P.R. 2009). *See also Metro. Life Ins. Co. v. Ditmore*, 729 F.2d 1, 9 (1st Cir.1984) ("Third party claims [are] by definition logically dependent on the resolution of the original suit"). Madera Events's motion for summary judgment (**ECF No. 69**) is thus hereby deemed as **MOOT,** because Madera Events is no longer a party to this case.

In any event, Martínez's third-party complaint against Madera Events should have been dismissed from the get go – "a third-party plaintiff may not implead a third-party defendant purely on direct liability from the third-party defendants to the plaintiff." *Zurich Am. Ins. v. Lord Elec. Co. of Puerto Rico*, 828 F. Supp. 2d 462, 468 (D.P.R. 2011); *United States v. Gov't Dev. Bank*, 132 F.R.D. 129, 131 (D.P.R. 1990) ("a third-party plaintiff cannot attempt to stand in the shoes of the plaintiff and assert a claim against the third-party-defendant that rightfully belongs to the

---

[5] Madera Events is an event production company that Lajas hired to facilitate the production of a series of events to be held in August of 2018.  **ECF No. 70** at 2. While plaintiffs did not directly sue Madera Events, Martínez filed a third-party complaint against Madera Events. **ECF No. 29.**

plaintiff itself. To be valid, a third-party complaint must assert a claim that the third-party plaintiff has in its own right.").

## VI. Conclusion

Based on all the above, Martínez's motion for summary judgment (**ECF No. 86**) is **GRANTED**. [6] All of plaintiffs' claims against Martínez are thus **DISMISSED WITH PREJUDICE**. The third-party complaint against Madera Events (**ECF No. 29**) is also **DISMISSED WITH PREJUDICE**. In addition, Madera Event's motion for summary judgment (**ECF No. 69**) is hereby deemed as **MOOT**.

The Clerk of Court shall enter partial judgment dismissing all claims against Martínez with prejudice, and all third-party claims against Madera Events, with prejudice.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2021.

                                                  **S/AIDA M. DELGADO-COLÓN**
                                                  **United States District Judge**

---

[6] The Court is troubled by plaintiffs' lack of competent evidence and due diligence, disregard for the evidence provided by Martínez in discovery, and indifference to the time and resources taken from the parties and the Court.